## RICHARD EVANS

### v.

## GEORGE CHESSMOND.

*Master and Servant—Personal Injuries—Contributory Negligence—Assumption of Risk.*

1. Where a party voluntarily goes into a known danger while pursuing his duties, not required or forced so to do by the master, and is injured, he can not recover.

2. Where plaintiff, an employe in defendant's coal mine, was injured by a rock falling upon him from the roof of one of the passages, and it

appeared that the dangerous condition of the roof was as well, or better, known to plaintiff than to any other person, and that he did not notify defendant or his fore man of the danger, it is *held:* That he could not recover.

[Opinion filed December 8, 1890.]

APPEAL from the Circuit Court of LaSalle County; the Hon. GEORGE W. STIPP, Judge, presiding.

Messrs. O. CHUBBUCK, McDOUGALL & CHAPMAN and A. J. O'CONOR, for appellant.

Mr. M. T. MOLONEY, for appellee.

LACEY, J.   This was a suit brought by appellee against the appellant to recover for damages resulting from an injury received by him while engaged as a miner in the coal mine of the latter.

The gravamen of the charge as contained in the declaration is that appellant was the owner and operator of a coal mine in which appellee was employed to mine coal, and that it was his duty to keep the entry ways leading from the shaft to different portions of the mine and cells securely propped and in good repair and condition so that the stones and coal upon said roof would be secure; that it was required by law that appellant should examine such mine and keep such entry ways and roofs thereof, in good and sufficient repair and safe for travel.   It was then charged that appellant failed in the above particulars, and by reasont hereof the appellee, while in the exercise of care and caution, and while he was engaged as a miner in passing on and along one of said entry ways adjacent to the room in which he worked, was struck and injured by falling rock and coal from the roof of said entry way.

There was a trial upon issue being joined and the jury returned a verdict for appellee for $3,000, upon which after overruling a motion for a new trial judgment was rendered.

From this judgment this appeal is taken, and the judgment sought to be reversed and several grounds of error assigned, chiefly that the verdict is against the weight of the evidence,

Evans v. Chessmond.

that the court gave erroneus instructions for appellee and
admitted improper evidence on his part.

We will examine the first cause assigned for error first.

The facts of the case appear in substance about as follows:
There never were any props or support to the roof main-
tained in the mine of appellant and the roof was of a mate-
rial called soap stone and was as a rule an ordinarily safe roof
though not as good as roofs of some other material.   But it
also appears that appellee accepted employment under appel-
lant and continued therein fully knowing the condition of the
mine so far as props and supports were concerned and with-
out exacting any promise from appellant that any would be
placed in the mine.   The immediate cause of the accident
was the falling of a rock or bowlder that hung in the roof of
an entry way near room 22, where appellee was at work run_
ning coal, and under which he ·was passing at the time it fell,
in the discharge of his duty, to see if he could get any cars
or to find out whether the mules had quit or not on three-
quarters time.   The accident happened and the rock fell on
him at a point about twenty feet from the mouth of the
room where he had been at work.

It appears from the evidence of the appellee himself that at
about two o'clock of the day he was injured and a short time
prior to the accident that he was called upon by one Stubbs,
an employe of the appellant, to assist in fixing a rail in
the track immediately under the rock in question.   Stubbs
requested him to sit down with his back against the ribbed
side and hold the rail with his feet until he pounded the
spikes in with his big sledge.   He looked up and seeing there
was danger while sitting down to hold the rail with his feet
he got up, refused to assist and returned to his room.   The
appellee testified that he saw there was a dangerous loose
rock.   About three-quarters of an hour after this the acci-
dent happened as above stated.   He also stated that the roof
or rock was about three-quarters of an inch separated from
the other and " they ascertain whether a roof is sound by
sounding it with a pick or other instrument and tell by the
sound."   Neither he nor Stubbs sounded it.   He stated he did

not know when the rock would fall but knew it was liable to
fall at any moment. Stubbs did not think it was dangerous.
Stubbs had no control over the appellee, he was a common
laborer in the mine the same as appellee and paid by the day.
Appellee did not notify Anderson, who hired and discharged
the men and controlled them and he knew of no one else who
did. The appellee thinks the rock would fall down at the
touch of a pick. He testified he did not take it down
because he had nothing to do with it and it was not his work.
The appellee says the reason why he went into so dangerous
a place was because he was in a hurry and did not notice and
did not think about it. Stubbs was not a man that had any
particular class of work to oversee and to do, he did any kind
of work he was ordered to do. The testimony of Wright,
however, shows that he notified Anderson that there was a
bad rock in the left entry that he wanted to attend to. This
Anderson utterly denies in his testimony and it would seem
to us from all the evidence and circumstances he was most
entitled to credit, but we would not be understood as saying
that the jury was not justified in believing Wright if they did
so believe him. The appellee the next day after giving his
first evidence again came on the witness stand and denied
swearing to certain statements concerning the dangerousness
of the rock and tried to modify his testimony, but we are well
satisfied, all of it considered, it must be understood that he was
aware that the rock was dangerous as he was in a position to
and did look at it and saw that it had parted from the balance
of the roof three-quarters of an inch which he never denied,
and that he then and there refused to remain under it. In
our opinion according to the undisputed facts in the case the
verdict was manifestly against the weight of the evidence.
It can not be well contradicted that the appellee knew more
about the dangerous condition of the rock than Anderson or
any one else, because he had seen the dangerous indications
which he well understood. He was of the opinion that a
touch of the pick would have started the rock down. He
also knew he could tell absolutely the condition of the rock
by tapping on it with a pick yet he took no precaution what-

ever to make any test or to let it down, but recklessly went under it with full knowledge of its dangerous character; even not taking the trouble to notify Anderson, the overseer of the mine, that the rock was dangerous and to remove it. So heedless was he that he never thought of it any more but went under it without further examination or without taking the least precaution while he could have taken another passage-way out of his room.

If this kind of negligence could be shown up against Anderson how abundant would have been the evidence of negligence on appellant's part. But the rule of law is that both parties must exercise care and caution. The defendant, in order to entitle the plaintiff to recover, must be shown by a preponderance of the evidence to have been negligent and also it must be shown that plaintiff himself was in the same exercise of care and caution. It is a well settled law of this and most other States, if not all, that where a servant continues in the employ of a master, knowing that the employment is dangerous, and also all the conditions under which he must labor, he takes the risk of the dangerous machinery or surroundings, and if he is injured in consequence he can not recover, unless he has brought this knowledge to the employer and exacted a promise of improvement, when he may remain in the master's employ a reasonable time at his risk. It is also the law if a party voluntarily goes into a known danger while pursuing his duties not required or forced to by the master and is injured he can not recover. We cite as fully sustaining the above principles the following cases furnished us in appellant's brief: Morris v. Gleason, 1 Ill. App. 510, and cases there cited; C. & E. I. R. R. Co. v. Geary, 110 Ill. 383; Camp Point Mfg. Co. v. Ballou, 71 Ill. 417; St. L. & L. Ry. Co. v. Britz, 72 Ill. 257; C. & A. R. R. Co. v. Monroe, 85 Ill. 25; Wharton's Law of Negligence, Sec. 214. Many other cases might be cited but these are enough to clearly show the rule. Applying the law to the facts we can not see how the jury could return the verdict it did. Certainly greater negligence appears on the part of appellee than appellant.

We think also the court erred in not sufficiently guarding

the appellee's first instruction in respect to his negligence. The instruction, among other things, reads: "And if the jury further believe from the evidence that in going after said cars he (plaintiff) was in the line of his ordinary work and was then exercising ordinary care to prevent being injured, etc., then the jury should find for the plaintiff." It appears from the evidence that the most of the negligence was in going under the rock at all under the circumstances, not in the manner of going under it as the jury might well understand from the instruction. However, we might feel disposed to overlook this error, as the appellee's instructions were full upon this point, were the verdict supported by the evidence.

There is one objection to appellee's evidence that we think is well taken, and that is, the court allowed him to show that at the time of the accident the appellant kept no book wherein a statement of the condition of the mine was kept each morning. Sec. 4, October, 1887, entitled "Miners," requires such a record for the "examination of the inspector." We can not see for what purpose this was introduced. There was no allegation in the declaration that the injury was caused by the omission to keep such a book, hence, it was not proper to introduce the evidence. It might have a tendency to prejudice the jury unjustly against appellant by showing a general violation of the statute. The other objections to evidence we can not see are well taken. For the above reasons the judgment is reversed and the cause remanded.

*Reversed and remanded.*